IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2004

## THOMAS WILLIAM FARR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**Nos. 2000-A-274, 2000-I-971     J. Randall Wyatt, Judge**

---

**No. M2003-00480-CCA-R3-PC - Filed April 14, 2004**

---

The Defendant, Thomas Farr, pled guilty to one count of second degree murder and two counts of solicitation to commit first degree murder. In accordance with the plea agreement, the Defendant was sentenced to thirty years on the murder charge and to eight years on each of the solicitation charges, which terms were concurrent to each other but consecutive to the thirty year term, for an effective sentence of thirty-eight years. The Defendant subsequently filed for post-conviction relief on the grounds that his lawyer was ineffective and that his plea was not knowingly and voluntarily entered. After a hearing, the trial court denied relief. This appeal followed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Thomas William Farr.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Tom Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's conviction for second degree murder was based upon his involvement in the shooting death of his wife. His convictions for two counts of solicitation of first degree murder grew from his attempts to obtain someone to kill a detective and an assistant district attorney general who were involved in the investigation and prosecution of the Defendant for the murder of his wife.

The Defendant testified at the post-conviction hearing that, at the time he entered his plea, he was a Range I offender, subject to a sentence of no more than twenty-five years for second degree murder. He stated that his lawyer did not explain to him that his plea agreement was for a Range II sentence of thirty years. He admitted, however, that he understood at the plea hearing that he was receiving a sentence of thirty years to be served at one hundred percent. The Defendant also testified that his lawyer told him that, according to the prosecutor, if he did not take the plea, the State planned on prosecuting his sister for her involvement in the solicitation charges. He further stated that he was told that, if he did not take the plea, the State was going to "turn the charges over" to the U. S. Attorney's office for federal prosecution. He stated that, prior to his plea, he had been "considering suicide." He admitted, however, that he told his lawyer not to say anything about his mental state. At the plea hearing, he stated, his mental condition was "[c]onfused, distraught, not sure if [he] knew what [he] was doing." The defendant testified that he was college educated, having both an undergraduate degree and a master's degree.

The Defendant explained that, prior to his plea, defense counsel had filed a motion to recuse the District Attorney's office because two of the pending charges involved two state officials. The Defendant stated that his lawyer told him that this motion had been denied. The Defendant also testified that his lawyer told him "very strongly" that the legislation providing that sentences for second degree murder be served at one hundred percent was likely to be changed to requiring only sixty percent service.

Mr. Martin Szeigis testified that he represented the Defendant during the plea process. He testified that the State provided him with extensive discovery. His opinion was that the Defendant faced a "strong likelihood of conviction on the murder case." He testified that he repeatedly explained to the Defendant what his sentence would be, its ramifications, and that he would be pleading to a sentence that was outside of his Range. During these discussions, the Defendant asked "normal" and "intelligent" questions. Mr. Szeigis explained to the Defendant that he would be entitled to up to fifteen percent sentencing reduction credits, but never told the Defendant that he would be eligible for release after service of sixty percent of his sentence.

Mr. Szeigis never had any questions about whether the Defendant was entering his plea voluntarily. On the day of the plea hearing, he saw nothing to alert him to any mental problems on the Defendant's part. He stated that "at no time did we feel like . . . there was a competency issue" and that the Defendant's mental state "was not something that . . . we felt that would be to his advantage to pursue." He explained that the Defendant was concerned about his sister, but he did not think that the Defendant's concern influenced his decision to accept the plea agreement. Rather, "the evidence and . . . the evaluation of the evidence was the significant reason" for the Defendant's decision to accept the plea.

Mr. Szeigis discussed with the Defendant possible federal prosecution against both him and his sister. His information in this regard came from the state prosecutor, and he did not have any direct discussions with the U. S. Attorney's office. Introduced into evidence at the post-conviction hearing was a letter from the State prosecutor to Mr. Szeigis providing that "If [the Defendant] enters

this plea, there will be no federal or further state prosecution for his solicitation of Mr. Roger Bray or Deandre Goodwin to commit any criminal offense. In addition, his sister Aubrey F. Duncan will not be prosecuted for conspiracy to commit murder by either state or federal authorities for her part in sending money to Russell Bray."

Mr. Szeigis testified that the motion to recuse the District Attorney's office was pending at the time of the plea, and that he did not tell the Defendant that it had been denied.

The trial court found that the Defendant's allegation that Mr. Szeigis misled him about the passage of legislation which would lower his release eligibility date was "not supported by the record," thereby finding that the Defendant was not credible on this point. The trial court also rejected the Defendant's claim that Mr. Szeigis told him that the motion to recuse the District Attorney's office had been denied. The trial court further found "absolutely no evidence" to support the Defendant's allegation that his plea was the result of threats by the State and prosecutorial misconduct on the part of the District Attorney's office. The trial court concluded that the Defendant "was represented in a competent and effective manner by attorney Szeigis." Taking into account the transcript of the plea hearing, which was admitted into evidence at the post-conviction hearing, the trial court determined that "it carefully explained the plea petition to the [Defendant] as well as his rights in connection with pleading guilty, numerous times during the proceedings. The Court also notes that the Petitioner acknowledged the Court's explanation and clearly indicated that he understood. Based on the evidence presented, the Court is of the opinion that the Petitioner understood the plea agreement and entered into it knowingly and voluntarily." Accordingly, the trial court denied the Defendant's claim for post-conviction relief. The Defendant now contends that, in so doing, the trial court erred.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

-3-

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made. See Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law-- such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

The trial court entered a thorough and comprehensive order setting forth its findings of facts and conclusions of law. The court found that the Defendant knowingly and voluntarily entered his guilty pleas with the effective assistance of counsel. The record in this case fully supports the findings of the trial court and demonstrates that the Defendant entered his guilty plea knowingly and voluntarily and with the effective assistance of counsel. Accordingly, the Defendant is not entitled to relief in his appeal.

**CONCLUSION**

For the reasons stated above, the judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE